**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Rome Ish-Hurwitz, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| Trader Joe's Company, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**CLASS ACTION COMPLAINT**

1.      Plaintiff Rome Ish-Hurwitz ("Plaintiff") individually and on behalf of all others similarly situated brings this Class Action Complaint against defendant Trader Joe's Co. ("Defendant" or "Trader Joe's") for Defendant's reckless, and/or intentional practice of failing to disclose the presence of cadmium and lead (collectively "Heavy Metals") in its dark chocolate products, including Trader Joe's Dark Chocolate (72% Cacao) and Trader Joe's The Dark Chocolate Lover's Chocolate (85% Cacao), among others (collectively, the "Products"). Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances on the Products' packaging and restoring monies to the members of the proposed Class, who would not have purchased the Products had they known they contained the Heavy Metals and would not have paid premium prices for the Products had they known the truth about the existence of Heavy Metals in the Products. Plaintiff alleges the following based upon personal knowledge, as well as investigation by his counsel as to themselves, and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable

opportunity for discovery.

## NATURE OF THE ACTION

2.      Trader Joe's specifically represents to consumers that "we want to make absolutely clear that we would never sell any product we believe to be unsafe.  We take these matters seriously – personally, even, as our families eat and drink TJ's products too."[1]  Consistent with such promises, reasonable consumers, like Plaintiff, trust manufacturers like Defendant to sell dark chocolate products that do not contain or have a material risk of containing Heavy Metals. Reasonable consumers certainly expect the dark chocolate products they purchase for their individual and family consumption to not be contaminated with Heavy Metals, substances known to accumulate and have significant and dangerous health consequences.

3.      Consumers lack the scientific knowledge necessary to determine whether Defendant's Products do in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the products.  Accordingly, reasonable consumers must and do rely on Defendant to know what its products contain and properly and fully disclose those contents. Product contents, particularly contents like lead and cadmium, are material to a reasonable consumer's purchasing decisions.

4.      Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products throughout the United States, including in this District.

5.      Defendant fails to disclose on its packaging that the Products contain Heavy Metals.

6.      No reasonable consumer would expect or understand that the Products contain or have a material risk of containing Heavy Metals.

---

[1] https://www.traderjoes.com/home/FAQ/product-faqs (last accessed January 19, 2023).

7.     Defendant touts on its website the safety and quality of its Products.  For example, on its website's "About Us" page, Defendant states:

> Trader Joe's is a national chain of neighborhood grocery stores. We are committed to providing our customers outstanding value in the form of the best quality products at the best everyday prices. Through our rewarding products and knowledgeable, friendly Crew Members, we have been transforming grocery shopping into a welcoming journey full of discovery and fun since 1967.
>
> …
>
> To earn a spot on our shelves, each product is submitted to a rigorous tasting panel process, in which every aspect of quality is investigated in context of the price we can offer. If a product is assessed as an outstanding value, it becomes an essential part of the Trader Joe's shopping adventure.[2]

8.     Further, Defendant also touts the safety and quality of its Products in the "FAQ" section of its website. In response to the question "[w]hat can I expect from Trader Joe's private label products?" Defendant claims:

> When you see our name on a label, you can be assured that the product contains:
>
> - YES quality ingredients
> - NO artificial flavors
> - NO artificial preservatives
> - YES colors derived only from naturally available products
> - NO MSG

---

[2] https://www.traderjoes.com/home/about-us (last accessed January 19, 2023).

- NO genetically modified ingredients

- NO partially hydrogenated oils (artificial trans-fats)

- NO "marketing" costs

- YES tasting panel approval

- YES great price[3]

9.      Defendant's website contains assurances that "nothing is more important than the health and safety of our customers and Crew Members," and a promise that Trader Joe's would "never sell any product we believe to be unsafe."[4]

10.     However, contrary to Defendant's assurances, the Products have been shown to contain detectable levels of cadmium and lead, both known to pose health risks to humans.[5]

11.     Defendant fails to disclose to consumers that the Products contain (or have a material risk of containing) Heavy Metals.  Nowhere on the Products' packaging is it disclosed that they contain (or have a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions").

12.     Recently, it was revealed that Defendant is knowingly and/or recklessly selling products that contain cadmium and lead.  An article published by Consumer Reports identified certain dark chocolate products of Defendant's (herein defined as the "Tested Dark Chocolate"), including Defendant's Products, that were tainted with significant levels of Heavy Metals.

---

[3] https://www.traderjoes.com/home/FAQ/product-faqs (last accessed January 19, 2023).

[4] *Id.*

[5] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports (Dec. 15, 2022) (the "Consumer Reports Article") (available at https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/) (last accessed January 19, 2023).

13.     Based on the Omissions, no reasonable consumer had any reason to know or expect that the Products contained Heavy Metals. Furthermore, reasonable consumers like Plaintiff, who were purchasing the Products for consumption by themselves and their families, would consider the mere presence (or risk) of Heavy Metals a material fact when considering whether to purchase the Products.

14.     Defendant knows its customers trust the quality of its Products and expect the Products to be free of Heavy Metals. Defendant also knows that its consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for Products they believe meet these standards. Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contained Heavy Metals.

15.     Defendant knew the consumers to whom it markets the Products would find its Omissions material and that it was in a special position of public trust to those consumers.

16.     The Omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed Heavy Metals.

17.     The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for the Products that omitted material information as to the Products' true quality and value and/or paid more for the Products than they would have had they known the truth about the Products. Defendant continues to wrongfully induce consumers to purchase its Products.

18.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendant's Products.

## JURISIDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendant because Plaintiff purchased the Products in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this District, Defendant has marketed, advertised, and sold the Products in this District, and Defendant has caused harm to Plaintiff and other Class members in this District.

## PARTIES

22.     Plaintiff Rome Ish-Hurwitz ("Plaintiff Ish-Hurwitz") is, and at all times relevant hereto has been, a resident of Lake and Cook County in the State of Illinois, which lies within this District.

23.     Plaintiff Ish-Hurwitz purchased Trader Joe's The Dark Chocolate Lover's Chocolate Bar, 85% cacao at Defendant's stores located in Northbrook and Chicago, Illinois. Plaintiff Ish-Hurwitz estimates he purchased this Product at least twice per month between approximately 2018 and December 2022. Plaintiff Ish-Hurwitz believed he was purchasing quality and healthy dark chocolate products that did not contain (or have a material risk of containing) Heavy Metals.

24.     Prior to purchasing the Products, Plaintiff Ish-Hurwitz saw and relied upon the

packaging of the Products. During the time Plaintiff Ish-Hurwitz purchased and consumed the Products, and due to the Omissions by Defendant, he was unaware that the Products contained (or had a material risk of containing) Heavy Metals and would not have purchased the Products if that information had been fully disclosed. Plaintiff Ish-Hurwitz would be willing to purchase the Products in the future if he could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

25. Defendant Trader Joe's Company is a well-known national chain of grocery stores headquartered in Monrovia, California. Defendant is involved in the production, marketing, distribution, and sale of a variety of dark chocolate products throughout California and the United States.

26. During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products. Defendant therefore had control over how to label its Products as to their contents.

27. Defendant has been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the Trader Joe's name throughout the United States, including in this District. It has done so continuously throughout the Class Period. Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Products that did not disclose the presence of Heavy Metals. Defendant is also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished products.

28. Plaintiff relied upon the material Omissions missing from the Products' packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by

Defendant and its agents through packaging that contained the Omissions. The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Products.

## **FACTUAL ALLEGATIONS**

I.    **Consumer Reports Investigation Demonstrates the Presence of Heavy Metals in Products**

29.    In December 2022, Consumer Reports published a blockbuster report ("Consumer Reports Article") detailing the prevalence of Heavy Metals in dark chocolate products, including in Defendant's Products.[6] The Tested Dark Chocolate includes Defendant's 72% Cacao Dark Chocolate and The Dark Chocolate Lover's Chocolate 85% Cacao:[7]



---

[6]    Consumer Reports Article, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed January 19, 2023).
[7] *Id*.



30.     Using sophisticated testing techniques, Consumer Reports showed the Tested Dark Chocolate contains levels of lead and/or cadmium that exceed California's maximum allowable does level.

31.     As noted in the Consumer Reports Article, consumers "choose dark chocolate in particular for its potential health benefits, thanks to studies that suggest its rich supply of antioxidants may improve heart health and other conditions, and for its relatively low levels of sugar."[8] A recent survey from the National Confectioners Association, referenced in the Consumer Reports Article, found that more than half of the survey participants described dark chocolate as a "better for you" candy. [9]

32.     Consumer Reports tested 28 dark chocolate bars for lead and cadmium from a variety of brands, including dark chocolate bars from Trader Joe's.[10]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

33.     The Consumer Reports Article concluded that "[f]or 23 of the bars tested, eating just an ounce day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals. Five of the bars were above those levels for both cadmium and lead." [11]

34.     Among the products tested were two Trader Joe's dark chocolate products. Trader Joe's Dark Chocolate (72% Cacao), was found to contain cadmium and lead. Additionally, Trader Joe's The Dark Chocolate Lover's Chocolate (85% Cacao), was also found to contain both lead and cadmium.





35.     The Consumer Reports Article warned that dark chocolate tends to be higher in

---

[11] *Id.*

heavy metals than milk chocolate, likely because of its higher cacao content.[12] Cacao plants take up cadmium from the soil, with metal accumulating in cacao beans as the tree grows.[13] Lead on the other hand appears to get into cacao after the cacao beans are harvested.[14]

36.     Further, the Consumer Reports Article identified potential solutions to minimize or omit the presence of lead in cacao, including changes in harvesting and manufacturing practices.[15] Such practices could include minimizing soil contact with cacao beans as they lie in the sun, and drying beans on tables or clean tarps away from roads or with protective covers, so lead-contaminated dust would not land on the cacao beans.[16] Another option is finding ways to remove metal contaminants when beans are cleaned at factories.[17]

37.     Getting cadmium out of cacao is also possible by carefully breeding or genetically engineering plants to absorb less of the heavy metal. Other potential solutions include replacing older cacao trees with younger ones, because cadmium levels tend to increase as the plants get older and removing or treating soil known to be contaminated with cadmium.[18]

38.     More immediately, in order to minimize levels of cadmium in their products, chocolate makers, such as Defendant, could survey their cacao-growing areas to determine cadmium levels, and favor beans from places with lower levels.  They could then blend beans from

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

higher-cadmium areas with beans with lower levels, which some manufacturers are already doing.

39.     For example, the CEO at Taza, which makes one of the products found to have lower levels of both lead and cadmium in the Consumer Reports' tests, stated that his company mixes beans from "different origins to ensure that the final product" has lower levels.[19]

## II.     Defendant Omits Any Mention of Heavy Metals on Its Packaging

40.     Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Products throughout the United States.

41.     Defendant's Products are available at numerous retail and online outlets throughout the United States.

42.     Defendant touts its commitment to providing its customers with "outstanding value in the form of the best quality products…."[20]

43.     Defendant further claims that "nothing is more important than the health and safety of our customers" and that it makes certain its products "meet our stringent quality and safety expectations."[21]

44.     However, inconsistent with such assertions about the quality of the products, Defendant knows or should know that the Products contain or have a material risk of containing Heavy Metals yet failed to disclose this fact to consumers.

45.     Defendant intentionally omitted the presence or material risk of Heavy Metals in the Products in order to induce and mislead reasonable consumers to purchase its Products and pay a price premium for them.

---

[19] *Id*.

[20] https://www.traderjoes.com/home/about-us (last accessed January 19, 2023).

[21] https://www.traderjoes.com/home/FAQ/product-faqs (last accessed January 19, 2023).

46.     As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence or material risk of Heavy Metals in the Products without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of these products.

47.     Information regarding the true nature and/or presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals in the Products from Plaintiff and members of the Class.

## III.    Due to the Presence and Material Risk of Heavy Metals in the Products, the Omissions are Misleading

### A.    Heavy Metals

48.     Lead and cadmium are heavy metals. The harmful effects of heavy metals are well-documented, particularly on children. Exposure to heavy metals puts children at risk for lower IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adult. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. As such, it is important to limit exposure.

49.     Given the negative effects of heavy metals (such as lead and cadmium) on child development and adult health, the presence of these substances in food is a material fact to reasonable consumers, including Plaintiff and the members of the Class.

50.     Defendant knows that the presence (or material risk) of Heavy Metals in its products is a material fact to reasonable consumers, including Plaintiff and the Class members.

51.     At all times during the relevant period, Defendant knew or should have known the Products included undisclosed levels of Heavy Metals and were not sufficiently tested for the

presence and material risk of Heavy Metals.

52.     Defendant's Products included undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished products. Defendant was or should have been aware of this risk and failed to disclose it to Plaintiff and the members of the Class despite having a duty to disclose.

53.     Defendant knew or should have known that Heavy Metals pose health risks to consumers.

54.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products and the contributing ingredients.

55.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products and the contributing ingredients.

56.     Defendant knew consumers purchased the Products based on the reasonable expectation that Defendant manufactured the Products to the highest standards. Based on this expectation, Defendant knew or should have known consumers' reasonable expectation is that the Products do not contain Heavy Metals, and that Defendant sufficiently tests the Products and corresponding ingredients for Heavy Metals.

57.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared lead and cadmium "dangerous to human health."[22]

58.     Additionally, while there are no federal regulations regarding the levels of Heavy

---

[22] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform U.S. House of Representatives, February 4, 2021 ("House Report") at 2 (available at https://web.archive.org/web/20230101105927/https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf) (last accessed January 19, 2023).

Metals in most consumer products, it is not due to a lack of risk.

59.     Indeed, the FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[23]

60.     Lead and cadmium are neurotoxins, or poisons, which affect the nervous system. As explained in the Consumer Reports Article:

> Consistent, long-term exposure to even small amounts of heavy metals can lead to a variety of health problems. The danger is greatest for pregnant people and young children because the metals can cause developmental problems, affect brain development, and lead to lower IQ, says Tunde Akinleye, the CR food safety researcher who led this testing project.
>
> 'But there are risks for people of any age,' he says. Frequent exposure to lead in adults, for example, can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[24]

61.     Heavy Metals accumulate in the body, meaning the risk they pose grows over time and can remain in one's body for years.[25]

---

[23] *Environmental Contaminants in Food*, U.S. Food & Drug Administration; available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed January 19, 2023).

[24] Consumer Reports Article, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed January 19, 2023).

[25] *See Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, August 16, 2018 (updated September 29, 2021); available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed January 19, 2023).

62.     However, the knowledge of the risks associated with exposure to heavy metals is not a new phenomenon.  Defendant knew or should have known the risks associated with the presence of Heavy Metals in foods consumed by its customers.[26]

63.     Despite the known risks of exposure to these Heavy Metals, Defendant has recklessly and/or knowingly sold the Products without disclosing the presence or risk of lead and cadmium to consumers like Plaintiff and members of the Class.

### B.  Cadmium

64.     The Products also contain (or have a material risk of containing) cadmium.

65.     Cadmium is considered a cancer-causing agent.[27]

66.     "[A]ny cadmium exposure should be avoided."[28] Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and fragile bones.[29]

67.     Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[30]

---

[26] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food- Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed January 19, 2023); *see also* 21 CFR 172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed January 19, 2023).

[27] https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed January 19, 2023).

[28] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environ Health Perspect. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed January 19, 2023).

[29] *Id.*

[30] https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed January 19, 2023).

68.     Exposure to cadmium is also linked to cardiovascular disease and cancer.[31]

69.     Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children[.]" [32]

70.     Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[33] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[34]

71.     Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequesters in [human] tissue."[35]

C.     **Lead**

72.     The Products contain (or have a material risk of containing) lead.

---

[31] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*, Environ Health Perspect. 2010 Dec; 118(12): A528-A534,

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed January 19, 2023).

[32] *Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures ("Healthy Babies Bright Futures Report") at 69 (available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed January 19, 2023).

[33] *Id.*

[34] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry; available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed January 19, 2023).

[35] Genuis S.J., Schwalfenberg G., Siy A.-K.J., Rodushkin I. (2012) *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE 7(11): e49676, available *at* https://doi.org/10.1371/journal.pone.0049676 (last accessed January 19, 2023).

73.    "No amount of lead is known to be safe."[36] Lead is extremely toxic, and its effects cannot be reversed or remediated.[37]

74.    Exposure to lead can result in neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, hypertension, and gastrointestinal and cardiovascular effects, and can also cause reduced fetal growth or lower birth weights in pregnant women.[38]

75.    Lead is a carcinogen and lead exposure can seriously harm the brain and nervous system in children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

76.    Exposure to lead in foods builds up over time.  Lead build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

77.    Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[39]

---

[36] *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, August 13, 2016; available at https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health (last accessed January 19, 2023).

[37] Consumer Reports Article, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed January 19, 2023).

[38] *What are Possible Health Effects from Lead Exposure*, Agency for Toxic Substances and Disease Registry; available at https://www.atsdr.cdc.gov/csem/leadtoxicity/physiological_effects.html (last accessed January 19, 2023).

[39] Healthy Babies Bright Futures Report at 18 (available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2022-08/StoreVsHomemade_2022.pdf (last accessed January 19, 2023). *See also* House Report at 11 (available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-

## IV. Dark Chocolate Can Be Manufactured with Heavy Metals Below Maximum Allowable Dose Levels

78. The Consumer Reports Article noted that "while most of the chocolate bars in CR's tests had concerning levels of lead, cadmium, or both, five of them were relatively low in both[,]" showing it is possible to make products with lower amounts of heavy metals.[40]

79. Dark chocolate manufacturers, such as Taza, are able to produce dark chocolate products with low levels of lead and cadmium.[41]

80. In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[42] These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[43] The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention ("CDC") identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[44]

81. In addition, as a result of public health efforts, exposure to lead has consistently

---

04%20ECP%20Baby%20Food%20Staff%20Report.pdf) (last accessed January 19, 2023).

[40] Consumer Reports Article, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed January 19, 2023).

[41] *Id.*

[42] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*. Journal of Public Health Management and Practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed January 19, 2023).

[43] *Id.*

[44] *Id.*

and notably decreased over the past 40 years.[45] These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[46] The progress towards decreasing childhood exposure to lead was so impressive that the Centers for Disease Control and Prevention ("CDC") identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[47]

## V.     The Material Omissions Misled and Deceived Reasonable Consumers

82.     The Omissions wrongfully convey to consumers that Defendant's Products are of a superior quality and have certain characteristics that they do not actually possess.

83.     For instance, although Defendant misleadingly causes consumers to believe its Products do not contain Heavy Metals due to the material Omissions, the Products do in fact contain or have a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers.

84.     Additionally, Consumer Reports conducted testing of selected samples of the Products sold by Defendant as well as the Tested Dark Chocolate made by other manufacturers. Each of Defendant's Products at issue contained levels of Heavy Metals that exceed California's MADL for cadmium and/or lead.[48]

---

[45] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*. Journal of Public Health Management and Practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed January 19, 2023).

[46] *Id*.

[47] *Id*.

[48] Consumer Reports Article, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last accessed January 19, 2023).

85. Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) Heavy Metals in the Products.

86. Due to the Omissions, a reasonable consumer would not suspect the presence of Heavy Metals in the Products. Unlike Defendant, reasonable consumers would not be able to independently detect the presence of Heavy Metals in the Products and are generally without any means to conduct his or her own scientific tests or to review scientific testing conducted on the Products. Moreover, information regarding the presence of Heavy Metals in the Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Products.

87. Reasonable consumers must and do rely on Defendant to honestly report what its Products contain.

88. Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect or understand that the Products contained or had a material risk of containing Heavy Metals.

89. In light of Defendant's statements regarding the quality of the Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Products contained or had a material risk of containing Heavy Metals.

90. Defendant had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

91. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

92. Defendant knew that properly and sufficiently monitoring the Products for Heavy

Metals in the ingredients and finished products was not only important, but critical.

93.    Additionally, Defendant knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of the Heavy Metals.

94.    Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Products by requiring proper monitoring and testing for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

95.    The Omissions are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiff.  This is true especially considering Defendant's long-standing campaign to market the Products as "best quality products" that meet Defendant's "stringent quality and safety expectations" as Defendant claims "nothing is more important than the health and safety of our customers[.]" Such statements were made to induce reasonable consumers, such as Plaintiff, to purchase the Products.

96.    The Omissions make the Products' packaging deceptive based on the presence or risk of Heavy Metals in the Products.  Reasonable consumers, like Plaintiff, would consider the presence or risk of Heavy Metals in the Products a material fact when considering what dark chocolate products to purchase.

97.    Defendant knew it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

98.    Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for Heavy Metals.

99.    The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the

Products.

100.    Defendant knew or should have known that the Products contained or may contain undisclosed levels of Heavy Metals that were not disclosed on the packaging.

101.    Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Products and ingredients for Heavy Metals to ensure the quality of the Products.

102.    Defendant knew or should have known that consumers paid higher prices for the Products and expected Defendant to sufficiently test and monitor the Products and ingredients for the presence of Heavy Metals.

103.    The Omissions are material and render the Products' packaging deceptive, as without full disclosure, reasonable consumers believe the Products are "safe, high-quality products," and are free of Heavy Metals.

104.    Moreover, no reasonable consumer could expect or understand that the Products contained Heavy Metals.

105.    The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

106.    As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Products.

## DEFENDANT'S OMISSIONS VIOLATE ILLINOIS LAW

107.    Illinois law is designed to ensure that a company's claims about its products are truthful and accurate.

108. Defendant violated Illinois law by recklessly, unfairly, and/or intentionally claiming that the Products were "best quality products" that meet Defendant's "stringent quality and safety expectations," and by not accurately detailing that the Products contain or have a material risk of containing Heavy Metals.

109. Defendant has engaged in this long-term advertising campaign omitting the mention that the Products contain (or have a material risk of containing) Heavy Metals.

## PLAINTIFF'S RELIANCE WAS
## REASONABLE AND FORESEEABLE BY DEFENDANT

110. Plaintiff read and relied upon the packaging of the Products when making his purchasing decisions. Had he known Defendant omitted and failed to disclose the presence of Heavy Metals on the Products' packaging, he would not have purchased the Products.

111. A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

## CLASS ACTION ALLEGATIONS

112. Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

All persons who are residents of Illinois who, from February 15, 2018, to the present, purchased the Products for household use, and not for resale, in Illinois (the "Class").

113. Excluded from the Class is the Defendant; any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, and employees; co-conspirators; all governmental entities; and any judge, justice, or judicial officer presiding over this matter.

114. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

115.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

116.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

       a)  whether the Omissions were misleading;

       b)  whether Defendant owed a duty to disclose;

       c)  whether Defendant knew or should have known that the Products contained or may contain heavy metals;

       d)  whether Defendant knew or should have known that the Products contained or may contain cadmium;

       e)  whether Defendant failed to disclose that the Products contained or may contain heavy metals;

       f)  whether Defendant failed to disclose that the Products contained or may contain cadmium;

       g)  whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

       h)  whether the Omissions are material to a reasonable consumer;

       i)  whether the Omissions are likely to deceive a reasonable consumer;

       j)  whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

       k)  whether Defendant had exclusive knowledge of the Omissions;

       l)  whether Plaintiff could have reasonable discovered the Omissions;

       m) whether Defendant violated Illinois state laws;

       n)  whether Plaintiff and members of the Class are entitled to actual, statutory, and punitive damages; and

o) whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

117. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

118. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

119. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, heavy metal and cadmium contamination and false advertising litigation.

120. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

121. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

122. As a result of the foregoing, class treatment is appropriate.

## CAUSES OF ACTION

### COUNT I

**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act 815 ILCS 505/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

123. Plaintiff incorporates by reference the allegations contained in the paragraphs

above as if fully set forth herein.

124. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

125. Plaintiff, the Class, and Defendant are "persons" within the meaning of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

126. The Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. § 505/1(b).

127. There was a sale of merchandise within the meaning of 815 Ill. Comp. Stat. § 505/1(d).

128. Defendant's Omissions, concealment, and other deceptive conduct as described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, et seq.

129. Defendant violated ICFA when it knowingly concealed, omitted, or failed to disclose that the Products contained (or had a material risk of containing) Heavy Metals.

130. Defendant knew or should have known the Products did not have the quality, ingredients, or standards as described above because they contained (or had a material risk of containing) undisclosed levels of Heavy Metals.

131. Defendant intended that the Plaintiff and the Class would rely on its Omissions, concealment, and other deceptive conduct regarding the Products' quality, ingredients, and standards when deciding to purchase the Products, unaware of the undisclosed material facts.

132. Plaintiff and the Illinois Class relied on, and were in fact deceived by, Defendant's Omissions, concealment, and other deceptive conduct with respect to the Products' quality, ingredients, and standards.

133.    Defendant's Omissions, concealment, and other deceptive conduct were likely to deceive, and did in fact deceive the Plaintiff and members of the Class with respect to the affected quality, ingredients, and standards.

134.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff, the Class, and other reasonable consumers would have considered them in deciding whether to purchase the Products.  Had Plaintiff and members of the Class known the Products did not have the quality, ingredients, and standards as advertised by Defendant and contained (or had a material risk of containing) Heavy Metals, he would not have purchased the Products or paid the premium price.

135.    Defendant's Omissions, concealment, and other deceptive conduct as described herein repeatedly occurred in the course of Defendant's trade or commerce and were capable of deceiving a substantial portion of the consuming public.

136.    Defendant's Omissions and other deceptive acts or practices caused Plaintiff and the Class to suffer injury in the form of actual damages when they purchased the Products that were worth less than the price they paid and that they would not have purchased had they known the Products contained (or had a material risk of containing) Heavy Metals.

137.    As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above, Plaintiff and the Class are entitled to actual damages, compensatory damages, injunctive relief, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

138.    Defendant's deceptive, misleading, unfair, and unconscionable practices as set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Class to an award of punitive damages defined under the ICFA, 815 ILCS 505/1(f).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged

Class, that the Court enter judgment in his favor and against Defendant as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative for the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

b) For an order declaring that Defendant's conduct violates the causes of action referenced herein;

c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper; and

h) For an order awarding Plaintiff and the Class her reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

of any and all issues in this action so triable as of right.

Dated:  January 20, 2023                                    Respectfully Submitted,

By: */s/ Steven A. Kanner*

**FREED KANNER LONDON AND
MILLEN, LLC**
Steven A. Kanner
Nia-Imara Binns*
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
nbinns@fklmlaw.com

**FREED KANNER LONDON AND MILLEN, LLC**
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6486
jjagher@fklmlaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Rebecca A. Peterson*
Robert K. Shelquist*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rapeterson@locklaw.com
rkshelquist@locklaw.com

**GEORGE GESTEN MCDONALD, PLLC**
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
LFeldman@4-Justice.com

**GEORGE GESTEN MCDONALD, PLLC**
David J. George*
Brittany L. Brown*
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
DGeorge@4-Justice.com
BBrown@4-justice.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson*
Catherine Sung-Yun K. Smith*
Shashi Gowda*
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
sgowda@gustafsongluek.com

**BARRACK, RODOS & BACINE**
Stephen R. Basser*
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

*Counsel for Plaintiff and the Proposed Class*

*Pro hac vice forthcoming